ANDREW LUDWIG, by Next Friend, Respondent, v. H. D. WILLIAMS COOPERAGE COMPANY, Appellant.

St. Louis Court of Appeals, April 4, 1911.

1. MASTER AND SERVANT: Furnishing Appliances: Duty of Master. It is the master's duty to use reasonable care to furnish and maintain appliances reasonably safe for the purpose for which they were intended.

2. ———: Injury to Servant: Defective Appliances: Sufficiency of Evidence. In an action by a servant for injuries received while operating a planing machine, evidence *held* to justify a finding that an insecurely fastened guardrail was not reasonably safe for the purpose of keeping the servant's hands from coming in contact with the knives of the machine, and that the master failed to use ordinary care in furnishing it.

3. ———: ———: ———: Duty of Master. Where a master adopted a guard rail for a planing machine, it was his duty to use reasonable care to keep it reasonably safe for the purpose for which it was intended; the fact that such machines were not ordinarily equipped with guard rails being immaterial.

4. ———: ———: ———: Assumption of Risk. A servant does not assume the risk of the master's negligence, except where the injury occurs from the manner in which the servant uses a defective appliance when a safe way to use it appears.

5. ———: ———: ———: ———: Contributory Negligence. Where the instrumentalities with which, or the place where, a servant is required to perform services are so glaringly defective and dangerous that a man of ordinary prudence would not use or occupy them, the master is not responsible for injuries resulting from their use or occupancy, though such defective conditions were caused by his negligence, a recovery being denied in such case on the ground of contributory negligence and not on that of assumption of the risk; but where the servant incurs the risks of place or machinery, which, though dangerous, are not so dangerous as to threaten immediate injury, or where it is reasonable to suppose that such place or machinery may be safely occupied or used with great skill and care, mere knowledge of the defects on the servant's part will not defeat a recovery.

6. ———: ———: ———: Contributory Negligence: Question for Jury. In an action by a servant for injuries received while operating a planing machine, his contributory negligence *held*, under the evidence, to be a question for the jury.

7. INSTRUCTIONS: Refusal: Not Based on Evidence Nor Within Issues. An instruction which, though abstractly correct, is not based on the evidence, or is outside of the issues, is properly refused.

8. ———: Assumption of Facts: Master and Servant. In a personal injury action, an instruction that if the jury found that the injury was the direct result of "such defective condition" of a guard rail, etc., was not erroneous as assuming that the guard rail was defective; the preceding part of the instruction having made it a condition to plaintiff's recovery that the jury should believe from the evidence that the guard rail was "out of order," and it being plain that it was such condition of being out of order that was referred to by the words "such defective condition."

9. NEGLIGENCE: Contributory Negligence: Age as Factor. In an action for injuries to a minor, the jury may consider plaintiff's age in determining whether he was guilty of contributory negligence.

10. APPELLATE PRACTICE: Conflicting Instructions: Estoppel to Complain. One may not complain that erroneous instructions given at his request conflict with proper instructions.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Robert & Robert* for appellant.

(1) The plaintiff was guilty of such negligence as to prevent a recovery. The defendant was guilty of none. The demurrer to the evidence should have been sustained. Minnier v. Railroad, 167 Mo. 99; Fugler v. Bothe, 117 Mo. 500; Barnett v. Mill Co., 130 S. W. 1119; Meyers v. Glass Co., 129 Mo. App. 556; Coonce v. Biscuit Co., 115 Mo. App. 629; Hester v. Pkg. Co., 84 Mo. App. 451; Marshall v. Press Co., 69 Mo. App. 256; Harris v. Railroad, 40 Mo. App. 255; Dutzi v. Geisel, 23 Mo. App. 676. (2) The plaintiff was well aware of the danger of getting his hand in the knives. He knew it for two months and "a ten-year-old child could tell if he put his hands in there the knives would cut them."

Smith v. Box Co., 193 Mo. 715; Nugent v. Mill Co., 131 Mo. 256; Hirsch v. Bread Co., 129 S. W. 106; Saversnick v. Pkg. Co., 125 S. W. 1192; Stegman v. Gerber, 123 S. W. 1041; McDermott v. Railroad, 87 Mo. 297; Krisch v. Richter, 130 S. W. 186. (3) As the plaintiff knew the condition of the machine upon which he was working for two months before the accident, he assumed the risk. Coin v. Lounge Co., 222 Mo. 488; Epperson v. Telegraph Co., 155 Mo. 346; Kergan v. Kavanaugh, 62 Mo. 230; Sutherland v. Lumber Co., 130 S. W. 40; Pulley v. Oil Co., 136 Mo. App. 172; Doss v. Railroad, 135 Mo. App. 643. (4) Instruction No. IV should have been given. The machine upon which the accident happened was the same as those used by all cooperage companies, and ordinarily and generally used. Coin v. Lounge Co., 222 Mo. 488; Fulwider v. Gas Co., 216 Mo. 582; Knorpp v. Wagner, 195 Mo. 637; Barnett v. Mill Co., 130 S. W. 1119; Talmann v. Nelson, 125 S. W. 1181. (5) (a) Instruction No. 1 was erroneous. It assumed that the "guard rail" was defective. Flucks v. Railroad, 122 S. W. 348. (b) Instructions Nos. 1 and 3 were erroneous. They were not only in conflict with instructions Nos. 7 and 10, but also permitted the jury to take into consideration the age of the plaintiff, when it appeared that he was seventeen years old and experienced. Fulwider v. Gas Co., 216 Mo. 582; Krisch v. Richter, 130 S. W. 186.

*Seneca N. Taylor* for respondent.

(1) It is the duty of the master to use reasonable care and precaution in providing safe and suitable machinery with which the employee is required to work. Failure of this constitutes negligence. McMurray v. Railroad, 225 Mo. 272; Curtis v. McNair, 173 Mo. 283; Browning v. Railroad, 124 Mo. 55; Henry v. Railroad, 109 Mo. 488; Bowen v. Railroad, 95 Mo. 268; Tabler v. Railroad, 93 Mo. 79; Siela v. Railroad, 82 Mo. 430; Covy

v. Railroad, 86 Mo. 641; Hulm v. Railroad, 92 Mo. 440;
Stephens v. Railroad, 96 Mo. 212; Young v. Iron
Co., 103 Mo. 324; Shortel v. St. Joseph, 104
Mo. 114; Steinhauser v. Spraul, 114 Mo. 551; Huss
v. Bakery Co., 210 Mo. 76; Dakan v. Mercantile Co., 197
Mo. 238; Chrismer v. Telephone Co., 194 Mo. 189; Combs
v. Const. Co., 205 Mo. 367; Reickert v. Packing Co., 136
Mo. App. 565, 570; Rowden v. Mining Co., 136 Mo. App.
37; Strumbo v. Zinc Co., 100 Mo. App. 635; Bennett v.
Lumber Co., 116 Mo. App. 710; Palmer v. Tel. Co., 91
Mo. App. 106; Dedrich v. Railroad, 21 Mo. App. 433;
Dutzi v. Geisel, 23 Mo. App. 676; Doss v. Railroad, 135
Mo. App. 643; Tsoulufas v. Nat'l. Enam & Stamping
Co., 139 Mo. App. 141; Chenoweth v. Sutherland, 129
Mo. App. 431; Spencer v. Bruner, 126 Mo. App. 94;
Mather v. Rillstone, 156 U. S. 391; Fogus v. Railroad,
50 Mo. App. 250; Flike v. Railroad, 53 N. Y. 549; Fuller
v. Jewett, 80 N. Y. 46; Cone v. Railroad, 81 N. Y. 206;
Maloney v. Locomotive Works, 14 R. I. 204; Davis v.
Railroad, 53 Vt. 84; Fay v. Railroad, 30 Minn. 23; Ford
v. Railroad, 110 Mass. 260; Huff v. Railroad, 100 U. S.
213; Railroad v. Kirk, 62 Tex. 227; 2 Thompson on Negli-
gence, sec. 975. (2) Where a master directs a ser-
vant to operate a machine that is out of order, and he
obeys and is injured, the law will not deny him a remedy
against the master on the grounds of contributory negli-
gence unless the danger was so glaring that no prudent
man would have operated it: Huhn v. Railroad, 92 Mo.
445; Stephens v. Railroad, 96 Mo. 212; Shortel v. St.
Joseph, 104 Mo. 115, 120; Steinhauser v. Spraul, 114
Mo. 551; Cox v. Granite Co., 39 Mo. App. 424; Fogus
v. Railroad, 50 Mo. App. 250; Halliburton v. Railroad,
58 Mo. App. 34; Weldon v. Railroad, 93 Mo. App. 668;
Snow v. Railroad, 8 Allen 441; Patterson v. Railroad,
76 Pa. St. 389; 2 Thompson on Negligence, sec. 975.
(3) The servant never assumes the risk occasioned by
the carelessness or negligence of the master, and to so
hold would violate the rules: (a) It is the duty of the

master to furnish the servant a reasonably safe place in which to work; (b) The law will not permit any person to contract against his own negligence. Strickland v. Woodworth, 143 Mo. App. 528; Scheurer v. Rubber Co., 126 S. W. 1037; Anderson v. Coal & Mining Co., 138 Mo. App. 81; O'Brien v. Mfg. Co., 141 Mo. App. 336; Shore v. Bridge Co., 111 Mo. App. 278; Garaci v. Const. Co., 124 Mo. App. 709; George v. Railroad, 125 Mo. 366; Murray v. Railroad, 225 Mo. 272. (4) Grant, there is a conflict between plaintiff's instructions numbered 1 and 2 and defendant's instructions numbered 7 and 10, still this affords defendant no ground for reversal; because plaintiff's instructions correctly state the law, and defendant's instructions do not, and appellant cannot in such case complain of errors in instructions given at its own instance, though in direct conflict with those given for the plaintiff: Flowers v. Helm, 29 Mo. 324; Schmitz v. Railroad, 119 Mo. 275; Baker v. Railroad, 122 Mo. 533; Green v. Cole, 127 Mo. 615; Seckinger v. Mfg. Co., 129 Mo. 602; Christian v. Insurance Co., 143 Mo. 468; Gates v. Railroad Co., 44 Mo. App. 495. (5) Where a boy uses the care reasonably to be expected from one of his years and capacity, he is not guilty of contributory negligence, and whether or not he did use such care is a question for the jury: Schmitz v. Railroad, 46 Mo. App. 380; Kempinger v. Railroad Co., 3 Mo. App. 581; Boland v. Railroad, 36 Mo. 484; O'Flaherty v. Railroad, 45 Mo. 71; Koons v. Railroad, 65 Mo. 592; Donoho v. Iron Works, 75 Mo. 401; Saare v. Railroad, 20 Mo. App. 336; Hudson v. Railroad, 101 Mo. 33; Williams v. Railroad, 96 Mo. 290; Dowling v. Allen, 102 Mo. 213; Railroad v. Gladman, 15 Wall. 401; Railroad v. Stout, 17 Wall. 657; Railroad v. Fitzsimmons, 22 Kan. 686; Hydraulic Co. v. Orr, 83 Pa. St. 322.

STATEMENT.—Action to recover damages for personal injuries suffered by plaintiff while in the employ

of defendant. Plaintiff had judgment for five hundred
dollars and the defendant has appealed. The material
facts in proof are as follows: Plaintiff, a boy seven-
teen years old, was employed by defendant planing
boards on a "rejointer." This was an iron table with
a transverse slot through it in which two knives re-
volved rapidly. The knives projected a little above the
surface of the table. On this table laid across the slot
were a gauge and a "guard rail." The guard rail was
intended to keep the hand from coming in contact with
the knives. It was eighteen inches long, five-sixteenth
inches thick, and was beveled, or sloped off to one side.
The space between the gauge and the guard rail was
two inches wide. The boards were planed by holding
them on their side edges and pushing them along and
through this space over the slot in which the knives
revolved. Plaintiff had been instructed by the fore-
man of defendant to run through two boards at a time
and he uniformly did this. Aside from this he had
received no other instruction, except to work on this
machine and to be careful and not get hurt. Though
the space was two inches wide, the combined thickness
of the two boards varied from time to time, sometimes be-
ing as narrow as three-fourths of an inch and sometimes
as thick as two inches, sometimes leaving one and one-
fourth inches exposure of the knives between the boards
and the guard rail and sometimes practically none. On
the occasion when plaintiff was injured, he was running
through two boards of a combined thickness of one inch,
leaving a one inch exposure of the knives between the
guard rail and the boards. The defect said to have
caused plaintiff's injury related to the manner of fasten-
ing the guard rail. It was not securely fastened to the
table by bolts or otherwise. There were only two holes
bored through the guard rail and table, and nails were
loosely dropped down into them, without being clinched,
leaving the guard rail loose and wabbling. As the plain-
tiff was running the boards through on the occasion

of his injury, he says there was a jar as from striking a knot and that his hand slipped or was jarred down on the guard rail, which, instead of stopping the hand, tipped, and allowed the hand to come in contact with the knives.   He testified that he thought the jar was caused by a knot "because it always jarred when there was a knot."

Plaintiff's little finger and part of his hand were cut off.   He had been working for defendant two months and during that time worked on the machine by which he was injured.   Since he had been there, the guard rail had been on the machine and was fastened in the same way as it was when he was injured.   In all the two-months he was using it, it wabbled.   He testified that he knew how the guard rail was fastened and that it wabbled; that he knew the knives were there revovling rapidly; that he saw the one inch space between the boards and the guard rail and that that was plenty of room to get his finger down in; that he knew that if he got his hand down among the knives it would get cut. He never spoke to any one about the guard rail being loose.   The foreman of defendant, who was over plaintiff and had employed him, testified that he was authorized to hire and discharge the "boys" and had general charge of the shop; that the guard rail had been wabbling all the time while the boy worked there; that he, the foreman, did not fix it because he did not have time; that he was not instructed to fix it; that it was not his business to fix defective machinery.

Defendant offered testimony tending to prove that "there was no guard furnished with these machines when they came from the factory.   They were not equipped with guards.   The wooden guard was put on there by the Columbia Cooperage Company, the predecessor of the H. D. Williams Cooperage Company, and when the H. D. Williams Cooperage Company bought the Columbia Cooperage Company out, the guard rail

was on the machine," and that "the machine which is used there is in general use by cooperage companies."

At the close of the evidence on behalf of plaintiff, and again at the close of all the evidence, the defendant asked the court to give to the jury an instruction in the nature of a demurrer to the evidence, which instruction the court refused to give and the defendant duly excepted. Thereupon the court at the request of the plaintiff gave to the jury the following instructions:

"1. The court instructs the jury that if they believe from the evidence that the guard rail of the machine in question was out of order, on the occasion when plaintiff was injured, as stated in the evidence, if they find he was injured, and that the defendant knew, or by the exercise of ordinary care would have known, that said guard rail was out of order, a sufficient length of time before such injuries as that by the exercise of reasonable care, it could have repaired and put said guard rail in order before plaintiff was injured, and if they find from the evidence that the injuries complained of were the direct result of such defective condition of such guard rail, and if they further find from the evidence that plaintiff was ordered by defendant or its foreman having charge over plaintiff to work upon said machine at the time of his injuries, and if they further find from the evidence that in view of plaintiff's age and experience he was using ordinary care for his personal safety at the time he was injured, then the jury will find for plaintiff.

"2. The court further instructs the jury that a person in charge of a distinct kind of work in an extensive factory, having under him laborers bound to obey his orders, is, as to them, a vice-principal to their common employer, and not their fellow-servant, and this, although another may be general foreman of the entire establishment, with authority over him. If, therefore, the jury believe from the evidence that Joe Doll had under him the plaintiff and other boys in the depart-

ment in which plaintiff was at work, and that plaintiff and other boys were bound to obey said Joe Doll's orders, then said Joe Doll stands in the relation of vice-principal to the defendant in this case.

"3. The court further instructs the jury that in considering whether or not plaintiff by his own act contributed to his injuries you should take into consideration his age, intelligence and discretion and if you find from the evidence that plaintiff did not possess the intelligence and discretion of an adult at the time of his injuries, then the jury may consider these facts in determining whether or not plaintiff was guilty of contributory negligence on the occasion in question."

It also gave an instruction on the measure of damages. The defendant duly excepted to the giving of all of said instructions. The court at the instance of the defendant gave to the jury the following instructions:

"5. If you believe from the evidence that the injury to the plaintiff was the result of his own carelessness and negligence, then your verdict must be for the defendant.

"6. You are instructed that if the danger of operating the machine mentioned in the evidence was apparent to the plaintiff, and that the defendant did not know the plaintiff was ignorant of the danger, then it was not the duty of the defendant to warn the plaintiff.

"7. If you believe from the evidence that the plaintiff saw or could, by the exercise of ordinary care, have seen the danger of operating the machine mentioned in the evidence, and continued to work at said machine thereafter, then he assumed the risk incidental to his employment, and your verdict must be for the defendant.

"10. If you believe from the evidence that the risk of injury by working on the machine mentioned in the evidence was apparent to a person of ordinary care and prudence, then the plaintiff assumed the risk incidental

to his employment, and your verdict must be for the defendant."

The court of its own motion gave to the jury an instruction defining "ordinary care" and "negligence;" also an instruction as to the power of nine to find and return a verdict.

The defendant asked and the court refused to give, and the defendant duly excepted to the court's refusal to give, the following instruction:

"4.   You are instructed that an employer is not required to furnish to an employee the newest and best appliances, but is only required to furnish those of ordinary character and of reasonable safety, and if you believe from the evidence that the machine mentioned in the evidence was such as was ordinarily and generally used in the business in which the defendant was engaged, then the defendant was not negligent and plaintiff assumed the risk incidental to his employment and your verdict must be for the defendant."

CAULFIELD, J.   (after   stating   the   facts).— I.   Defendant first assigns as error the action of the court in refusing to sustain its demurrer to the evidence.   We are convinced that the court's action was proper.

It is the master's duty to use reasonable care to furnish and keep appliances reasonably safe for the purpose for which they are intended.   This proposition needs no authorities to sustain it.   And we have no doubt that the jury was justified in finding from the evidence in this case that the insecurely fastened guard rail furnished by the defendant to the plaintiff was not reasonably safe for the purpose for which it was intended and that in furnishing it defendant failed to use reasonable care.   Nor is it material in this case that rejointers were not generally or  ordinarily  equipped with guard rails.  Having adopted a guard rail the law cast upon defendant the duty of using reasonable care

to furnish and keep it reasonably safe for the purpose for which it was adopted. [Bender v. St. L. & S. F. Ry. Co., 137 Mo. 240, 250, 37 S. W. 132.] Nor do we agree with counsel for defendant that "as the plaintiff knew the condition of the machine upon which he was working for two months before the accident, he assumed the risk." The servant does not assume the risks of the master's negligence, unless it be where the injury occurs from the particular mode or manner in which the servant uses the defective appliance when another safe way to use it appears. [Tucker v. Mine LaMotte Lead and Smelter Co., 155 Mo. App. 553, 134 S. W. 1101.] The effect upon the master's liability of the servant's remaining in the service and continuing to use the appliance after knowledge of its defective condition, due to the master's negligence, depends upon whether the servant's conduct in that respect amounted to contributory negligence, which in turn depends upon whether such conduct was an exercising of ordinary care. "The true rule in this state, as seems to be supported by the great weight of authority, is as below stated, viz.: Where the instrumentalities with which or the place where the servant is required to perform services are so glaringly defective and dangerous that a man of ordinary prudence would not use or occupy them, the master cannot be held responsible for injuries resulting from their use or occupancy, even though those defective conditions were caused by the negligence of the master. In such cases the servant's contributory negligence and not his assumption of risk would prevent his recovery. But if the servant incurs the risks of place or machinery which though dangerous are not so much so as to threaten immediate injury, or where it is reasonable to suppose that they may be safely used or occupied with great skill and care, the mere knowledge of the defects on the servant's part will not defeat a recovery." [George v. Railroad, 225 Mo. 364, 411, 412, 125 S. W. 196; Huhn v. The Mo. Pac. Ry. Co., 92 M. 440, 447,

4 S. W. 937.] Now in the case at bar there is no doubt that plaintiff knew of the defective fastening and resultant wabbling of the guard rail and that his hand would be cut if it went down to the knives in the space between the boards and the guard rail. But the question still remains whether the rejointer was so glaringly defective and *dangerous* on account of the insecure fastening, and the wabbling of the guard rail, that a man of ordinary prudence would not use it, or whether it was reasonable to suppose that the machine might be safely used with great skill and care. "Negligence on the part of the servant in such cases does not necessarily arise from his knowledge of the defect, but is a question of fact to be determined by the jury from such knowledge and all other facts and circumstances shown by the evidence." [George v. Railroad, 225 Mo. 364, 412, 125 S. W. 196.] Upon the record before use we do not feel constrained or justified to declare as a matter of law that the plaintiff was guilty of contributory negligence. The evidence presented nothing more than a case for the jury's determination.

II. The defendant's instruction numbered 4 was properly refused and this regardless of whether it correctly stated an abstract legal proposition. There was no evidence that the rejointer with the guard rail loosely fastened and wabbling was such as was ordinarily and generally used in the business in which the defendant was engaged. The evidence in that regard, as we understand it, referred solely to machines without guard rails. And as already indicated by us, the defendant's duty in respect of furnishing a rejointer *without* guard rails is not material to the issues in this case. By adopting a guard rail it assumed a duty which might not otherwise have been cast upon it. If, then, this instruction related to the use generally and ordinarily of rejointers with loosely fastened and wabbling guard rails it was without any evidence upon which to predicate it; and

if it related to such use of machines without guard rails it was without the issues in the case. In either event it was properly refused.

III. Defendant next contends that plaintiff's instruction numbered 1 was erroneous in that it told the jury that if they found from the evidence that the injury complained of was the direct result of "such defective condition" of such guard rail, "then," etc. The defendant asserts that by reason of the use of such language the instruction assumed that the guard rail was defective. There is no merit in this contention. In the preceding portion of the instruction it was made a condition to plaintiff's recovery that the jury believe from the evidence that the guard rail of the machine in question was *"out of order"* and it is plain that it was this condition of being "out of order" that is referred to by the words "such defective condition." The instruction did not assume the existence of the defective condition but submitted it as a question of fact to the jury.

IV. Defendant next complains that instructions numbered 1 and 3 were erroneous because they permitted the jury to take into consideration the plaintiff's age in determining whether he was using ordinary care or was guilty of contributory negligence. There was no error in this. [Campbell v. St. Louis & Sub. Ry. Co., 175 Mo. 161, 174, 75 S. W. 86.] And if it be true, as defendant asserts, that in this respect they conflict with instructions numbered 7 and 10 given on behalf of defendant, then the latter are erroneous and it cannot avail defendant to complain of the conflict. [Hall v. Railroad, 219 Mo. 553, 591, 118 S. W. 56.]

The judgment is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.