Jacob WEISENBERGER, Plaintiff and Respondent,

v.

H. E. MUELLER, Defendant and Appellant.

No. 7679.

Supreme Court of North Dakota.

March 10, 1958.

Rehearing Denied April 29, 1958.

J. K. Murray, Bismarck, for respondent.

Milton K. Higgins, Bismarck, amicus curiae.

BURKE, Judge.

In his complaint in this action plaintiff alleged that the defendant had maliciously and without probable cause instituted a criminal proceeding against him in which he was charged with the embezzlement of a heifer; that such proceeding had terminated favorably to the plaintiff and that he had been damaged in the sum of $50,-000. The defendant answered, denying generally the allegations of the complaint, alleging affirmatively that plaintiff had been guilty of the crime charged and counterclaiming for the value of the heifer alleged to have been embezzled. The action was tried in the District Court of Mercer County. During the trial and at the close of the testimony the defendant moved for a directed verdict. This motion was denied and the jury returned a verdict in favor of the plaintiff. Thereafter defendant moved for judgment notwithstanding the verdict. This motion was denied and defendant has appealed both from the order denying the motion for judgment notwithstanding the verdict and from the judgment which was entered in the case. We shall consider first the questions raised upon appeal from the order denying the motion for judgment notwithstanding the verdict.

The correctness of the trial court's ruling on such a motion depends upon whether the moving party was entitled to a directed verdict at the time the motion therefor was made. Olson v. Kem Temple, 78 N.D. 263, 49 N.W.2d 99; Lee v. AAA N. D. Auto Club, N.D., 68 N.W.2d 835. The motion for a directed verdict was upon grounds as follows:

1. That there was no proper proof of malice.

2. That there was no proper proof of want of probable cause.

Hyland, Conmy & Donahue, Bismarck, for appellant.

**3.** That the undisputed evidence shows probable cause to exist.

**4.** That the undisputed evidence establishes completely the legal defense that the defendant acted upon the advice of the special Assistant Attorney General after a disclosure of the facts in his possession.

The record in the case disclosed that plaintiff, for many years prior to the incidents which gave rise to the present controversy between the parties, had been the operator of a cattle ranch owned by the defendant. The contract between the parties was in writing and, by its terms, the plaintiff was entitled to one fourth of the increase in the herd as compensation for his services. During the term of the contract, and particularly during the last two years thereof, certain incidents had occurred which caused the defendant to suspect the plaintiff of stealing from him. As a result, bitter words had passed between the parties. Defendant told plaintiff that he would be lucky if he didn't die in the penitentiary and plaintiff replied by calling defendant vile names and ordering him off the premises. In August 1950, defendant notified the plaintiff in writing that the contract between the parties would be terminated on November 1, 1950, and directed the sale of the entire 1950 calf crop prior to that date. On November 9, 1950 defendant notified the plaintiff that he had sold the ranch and that the purchaser was entitled to possession whenever he wanted it.

Clifford Tysver, a farmer who resided about two and one half miles from defendant's ranch, testified that he called on the defendant early in February 1951, and asked if he might go to the ranch and inspect a shock loader, located on the premises, with a view to purchasing it. At this time, according to the testimony of both Tysver and the defendant, defendant instructed Tysver to look around at the ranch "for anything that appeared to be wrong so far as his interests were concerned." According to Tysver, he went to the ranch on February 16th when the plaintiff was not at home. He had brought plaintiff's mail with him and finding the door to the porch locked tied the package of mail to the door knob with a piece of bailing wire he had found on a fence post. He looked at the shock loader which was located about four rods south of the house. He then went to the barn which was three rods north of the house. There, he said, he found evidence of recent butchering; a hide, a head, legs and entrails. The hide bore the brand "HM connected" which was defendant's brand. The hide was slightly frozen. He took it home with him and cut out a piece from the right shoulder on which the brand had been placed. The next day he called on the defendant, gave him his version of what had happened and delivered the piece of hide bearing defendant's brand. The next business day February 19th defendant drove to Bismarck and consulted with an Assistant Attorney General. As a result of this conference Mr. T. A. Sailer of Hazen was appointed a Special Assistant Attorney General to investigate the facts and to institute a prosecution if it was warranted. On February 21st, a group of men, which included Melvin Erickson of the State Bureau of Criminal Investigation, the Sheriff of Oliver County, a Deputy Sheriff, State Brand Inspector, Reuben Goetz, Highway Patrolman, Lynn Amsden, and the defendant went to the ranch with a search warrant. They examined all the cattle they could find, sheering off the long winter hair to disclose the brands. All of the cattle except one bore the brand of the plaintiff. The odd one had a blurred brand on its right shoulder. The proper place for plaintiff's brand was on the right ribs and for defendant's brand, on the right shoulder. They also found the carcass of a recently butchered animal, hanging in a shed.

The plaintiff returned to Hazen with the officers. There, in Mr. Sailer's office he was questioned for about two hours.

He stated that, during the questioning, he told the officers that he had the hide, that had been taken from the carcass the officers had found, in a stall in his barn and that he would bring it to town the following day. His further testimony with respect to this hide is that he did bring the hide to town the next day; that he offered to show it to Mr. Sailer, but that Mr. Sailer told him to take it to the butcher shop; that he went to the butcher shop intending to leave the hide but that there a friend advised him not to let the hide out of his possession since he might have to have it to prove his innocence; that thereafter until warm weather he kept this hide locked in the trunk of his car.

Upon the advice of the Special Assistant Attorney General, the defendant signed a complaint charging the plaintiff with the embezzlement of a heifer. The complaint was signed on February 26th. Plaintiff was arrested the same day and a preliminary hearing on the charge was held the next day. At the preliminary hearing the principal witnesses were the defendant and Tysver. Plaintiff did not testify nor did he produce the hide he claimed had been taken from the slaughtered animal. He was bound over for trial in the district court and was released upon posting cash bail in the sum of $2,000. The case was dismissed without trial on the merits, on motion of the Attorney General of North Dakota and the State's Attorney of Oliver County on October 15, 1951. In April 1954 this action was commenced.

Because we believe it to be of controlling importance on this phase of the appeal, we shall direct our consideration first to the evidence concerning the want of, or the existence of, probable cause. In this consideration we must take the view of the evidence most favorable to the plaintiff. Armstrong v. McDonald, 72 N.D. 28, 4 N.W.2d 191; Smith v. Nortz Lumber Co., 72 N.D. 353, 7 N.W.2d 435; Knudsen v. Arendt, 79 N.D. 316, 56 N. W.2d 340. We must assume therefore that the witness, Tysver, was not telling the truth when he said he found a hide bearing defendant's brand near plaintiff's barn because according to plaintiff's testimony there was no such hide to be found. According to plaintiff's proof there were no grounds in fact for believing he was guilty of the crime charged. Such proof is prima facie evidence of want of probable cause. Johnson v. Huhner, 76 N.D. 13, 33 N.W.2d 268; Brown v. Selfridge, 224 U.S. 189, 32 S.Ct. 444, 56 L.Ed. 727. This prima facie proof cast upon the defendant the burden of going forward with the evidence and affirmatively establishing the existence of probable cause.

According to the Restatement of the Law, Torts, Sec. 662,

"One who initiates criminal proceedings against another has probable cause for so doing if he

(a) reasonably believes that the person accused has acted or failed to act in a particular manner, and

(b) (i) correctly believes that such acts or omissions constitute at common law or under existing statute the offense charged against the accused, or

(ii) mistakenly so believes in reliance on the advice of counsel under the conditions stated in Section 666."

Since for the purpose of this review we must, as has been heretofore stated, assume that the witness Tysver did not find the hide bearing defendant's brand at the place or in the manner stated in his testimony, the question of the existence of probable cause depends on whether Tysver related the story of the finding of the hide to the defendant, whether defendant believed that story and whether defendant's belief was reasonable in the circumstances. If defendant reasonably believed the facts related, there can be no question as to the reasonable-

ness of his belief that plaintiff had committed the crime charged. Both Tysver and defendant testified that Tysver had told the defendant of the finding of the hide and the other evidences of slaughtering near plaintiff's barn. Defendant testified that he believed what he was told. This evidence of course could not be directly controverted. No one could know what Tysver told the defendant in private except Tysver and the defendant and no one but the defendant could know what beliefs were formed in the secret recesses of his mind. Plaintiff attacked the credibility of these witnesses by directly challenging the truth of their testimony in other areas. At many points irreconcilable differences exist between the testimony of both the defendant and Tysver and that of other witnesses in the case. These differences were sufficient to raise an issue as to the credibility of their entire testimony. This issue was for the jury. Furthermore, the question of the existence of an essential belief on the part of a prosecutor is a question for the jury in an action against him for malicious prosecution. Kolka v. Jones, 6 N. D. 461, 71 N.W. 558, 66 Am.St.Rep. 615; Pickles v. Anton, 49 N.D. 47, 189 N.W. 684; Shong v. Stinchfield, 47 N.D. 495, 183 N.W. 268; Johnson v. Huhner, 76 N. D. 13, 33 N.W.2d 268.

█ As to malice there is direct evidence. The testimony as to defendant's long standing suspicion of the plaintiff, the testimony as to many prior exchanges of bitter words between him and the plaintiff and defendant's attempt to secure evidence against the plaintiff by private means would justify an inference of malice on his part by the jury.

█ The fact that defendant acted on the advice of counsel is, in the circumstances of this case, unimportant. If defendant believed the facts which he says he related to counsel he would have had probable cause to institute proceedings whether he had the advice of counsel or

not. If he did not believe them, the advice of counsel would not excuse him. Johnson v. Huhner, supra.

█ Since under the evidence in the case, the jury could reasonably have found both want of probable cause and malice the motion for judgment notwithstanding the verdict was properly denied.

Upon the appeal from the judgment there are fifteen specifications of error.

█ Specifications four, five and six relate to the refusal of the trial court to give requested instructions. The first of these is as follows:

"You are instructed that the magistrate's committment of the accused is evidence that the person initiating the proceedings had probable cause."

The rule said, in Corpus Juris, to be the general rule is: " * * * Where the result of the preliminary examination before a magistrate or other judicial officer is unfavorable to accused, and he is held, or committed, or bound over, this is prima facie evidence of probable cause, or evidence of probable cause sufficient to warrant a jury in finding its existence, but not conclusive." 54 C.J.S. Malicious Prosecution § 34, p. 995. Since under the statutes of this state a magistrate, before he can bind an accused person over for trial, must find that a public offense had been committed and that there is sufficient cause to believe the accused is guilty thereof (Sec. 29–0720, NDRC 1943) we think the above quoted rule should apply here and that therefore the requested instruction stated the law correctly.

The second of the requested instructions which was refused was as follows:

"You are instructed that a legally registered brand on livestock shall be prima facie evidence that the animal bearing the same is the property of the owner of such brand."

There can be no question but that this requested instruction correctly states the law. It is taken directly from Section 36-0919, NDRC 1953 Supp.

In submitting the case, the trial judge left it to the jury to determine not only the facts, but also, whether the facts found afforded reasonable grounds for believing that the plaintiff was guilty as charged by the defendant. Thus, under the instructions, the jury could have found the facts to be as defendant claimed them to be and still have held that such facts did not constitute probable cause for believing the plaintiff guilty. Under such a submission, the above stated requested instructions were pertinent to the issues and since they correctly stated the law it was prejudicial error to refuse to give them.

The third requested instruction which was refused was as follows:

"You are instructed that in a criminal case the defendant cannot be called as a witness by the state either at the trial or at a preliminary hearing, without his consent."

■ That the requested instruction correctly states the law is elementary. The only question is whether it was pertinent to the issues in the case. The defendant claims that the instruction was pertinent because the plaintiff testified that he had brought the hide, he claimed had been taken from the slaughtered animal, to the preliminary hearing and that no one had asked him to produce it and that, without this instruction, this testimony permitted an inference that the prosecuting officials were not diligent or even interested in finding out the true facts concerning the charge against the plaintiff. The testimony of the plaintiff was that on several occasions, at the ranch, at Hazen and at Center he told one or more of the persons connected with the prosecution about this hide and offered to show it to them and that none of them looked at it. The issue was

whether the officials had failed to take advantage of his voluntary offer to show them the hide and upon that issue the requested instruction had no bearing. It was therefore not error to refuse it.

■ Specifications of error eight, nine and ten relate to the reception in evidence of exhibits five, six and seven over the objections of the defendant. Exhibit five was a written motion for the dismissal of the criminal action against the plaintiff made by his attorney in that case. Exhibit six was the order dismissing that action signed by Judge Miller. Exhibit seven was the written motion for the dismissal of that action made by the Attorney General and the State's Attorney of Oliver County.

There can be no doubt but that exhibits five and seven were improperly admitted. They were no more than allegations of the attorneys' view of the facts and of their conclusions with respect thereto. They were clearly hearsay as to this defendant and in so far as plaintiff's pleading was concerned it was definitely self serving.

■ A different situation exists with respect to exhibit six which was the order dismissing the criminal action. It was essential, for plaintiff, in order to establish a cause of action, to show that the criminal action had terminated in his favor. For that purpose the order dismissing the prosecution was competent and material. However, this is the only purpose for which the order could be admitted. Anderson v. Fletcher, 228 Ill.App. 372; Casey v. Sevatson, 30 Minn. 516, 16 N.W. 407. In Sweeney v. Perney, 40 Kan. 102, 19 P. 328, 329, it was said:

"The record of such an investigation can be only used to prove the fact that such a judgment was rendered, for the reasons given above, but, when it is sought to use it as evidence of ulterior facts, then it at once becomes apparent that it is sought to bind a litigant to recitations

in a record to which he was not a party, and about which determination he had no voice or directions."

The foregoing quotation is particularly appropriate to the facts in this case for here the order of dismissal contained a finding that there was no evidence taken at the preliminary hearing upon which the Justice of the Peace was justified in binding the defendant over to the district court, although the record of that hearing was not before the court for review. It would appear that since such an order is admissible solely for the purpose of showing a successful termination of the prosecution, it would become immaterial if the fact of termination was admitted and therefore not an issue in the case. In this case the defendant, in his answer, admitted the termination of the prosecution and at the trial before the introduction of the exhibit, offered to stipulate that such termination had occurred. In these circumstances we are of the opinion that the exhibit was immaterial.

Specifications of error seven, nineteen and twenty relate to the striking of defendant's counterclaim and the allowance of an amendment to plaintiff's complaint. Since a new trial must be granted in this case it is unnecessary for us to pass on these specifications. Under the rules of procedure now in force defendant's counterclaim will clearly be a proper one and he will have adequate time to prepare to meet the allegations of the amended complaint.

The other specifications relate to what is asserted to be an undue restriction of the right to cross-examine. Since they involve no legal questions which are likely to arise on a new trial, we consider it unnecessary to consider them further.

Because of prejudicial error in the record the judgment is reversed and a new trial granted.

GRIMSON, C. J., and JOHNSON, SATHRE and MORRIS, JJ., concur.

On Petition for Rehearing

BURKE, Judge.

In this case the respondent has filed a petition for rehearing. In it he takes issue with our decision that Exhibits five and six were improperly admitted in evidence and that their admission constituted prejudicial error. He states that the record shows that these exhibits were received in evidence pursuant to stipulation of counsel.

The record of the trial shows a colloquy between counsel for the parties concerning the reception in evidence of the record in the criminal case upon which plaintiff's cause of action for malicious prosecution was based. Two subjects were under discussion, first, whether counsel for defendant would waive identification of the record by the clerk of court; and second, whether the whole record should be offered in evidence or counsel for plaintiff should be permitted to offer selected documents extracted by him from the record. During the discussion the following statements were made:

By Mr. Conny (Counsel for defendant): "If the court please, it seems to me that it would simplify matters, save a lot of time both now and later, if portions of the Clerk's file from Oliver County are to be put in this record, I believe that the entire file should be put in the record, and on behalf of the defendant we are willing to stipulate that the entire file be put into the record as an exhibit and as evidence in so far as it may be material. We do not believe it proper for counsel to just pick out that portion of the record that he wants and ask us to put that in. We are willing to put the whole thing before the Court and the Jury.

Mr. Murray (Attorney for plaintiff): "I am not asking for permission to put anything in. All I asked you was to waive the presence of the Clerk of Court.

Mr. Conmy: "I have made my offer.

Mr. Murray: "It was propaganda.

Mr. Conmy: "Why pick out a little here and there?

Mr. Murray: Are you making a speech now? I am not Mortimer Snerd.

Mr. Conmy: "Try your lawsuit."

 This record clearly shows an offer by the defendant's counsel to stipulate into the record in this case the record in the prior case subject to the right of counsel to object to the materiality of any part of that record. It shows a rejection of that offer by the attorney for the plaintiff. Thereafter the attorney for plaintiff offered separately certain documents selected by him from the record. These included Exhibits five and six. When they were offered, defendant's counsel objected to their reception in evidence. In the circumstances, it is clear that the prior limited and rejected offer to stipulate the whole record in evidence was not a waiver of defendant's right to object to selected documents which were offered piecemeal thereafter.

Since the other points raised in the petition are fully considered in the opinion heretofore filed, we deem it unnecessary to discuss them further here. The petition for rehearing is denied.

GRIMSON, C. J., and JOHNSON, SATHRE and MORRIS, JJ., concur.