Gracia LUND, by her guardian ad litem,
Donald R. Lund, Plaintiff and
Respondent,

v.

Raymond E. KNOFF, Defendant and
Appellant.

No. 7714.

Supreme Court of North Dakota.

Oct. 28, 1957.

Quentin N. Burdick, Fargo, for defendant and appellant.

Longmire, Caldis & Schwenke, Grand Forks, for plaintiff and respondent.

MORRIS, Judge.

This is an action for damages resulting from personal injuries received by the plaintiff as an employee of the defendant while working on a potato picking machine on defendant's farm October 9, 1954, ten days before the plaintiff's seventeenth birthday.

The plaintiff alleges in her complaint, with some particularity, that the work she was employed to do was dangerous and that she had no experience in the operation and use of the machine on which the work was performed; that the defendant knew this, but nevertheless negligently set the plaintiff to work picking potatoes off the conveyor of the machine without giving the plaintiff any warning or explanation of the dangers of said work.

The defendant by way of answer admits the occurrence of the accident, denies that he was negligent and alleges that the negligence of the plaintiff either wholly caused or proximately contributed to the accident which resulted in her injury. He also pleaded assumption of risk by the plaintiff.

After both parties rested the defendant moved for a directed verdict upon detailed grounds consistent with the answer. He stressed the points that the plaintiff had failed to make out a cause of action based on negligence and that the evidence established contributory negligence and assumption of risk on the part of the plaintiff. The trial court denied the motion and submitted the case to the jury. The jury returned a verdict for the plaintiff whereupon the defendant moved for a judgment notwithstanding the verdict or in the alternative for a new trial. The motion for judgment notwithstanding the verdict was based upon the grounds urged in the defendant's motion for directed verdict. The alternative motion for a new trial was based upon errors of law in denying the motion for a directed verdict, specified rulings of the trial court with respect to the admission or exclusion of evidence dur-

678

ing the trial and errors in instructions to the jury. It is also urged that the verdict of $9,536.15 was so excessive as to indicate passion or prejudice or both on the part of the jury. The court denied the entire motion and the defendant appealed.

When the plaintiff started working on the machine on which she was injured it was being operated on a neighboring farm on September 27th. The machine, of which the defendant was part owner, was being used on defendant's farm at the time of the accident. The operation was in charge of Harry Kobler who drove a tractor which pulled the potato picker. This machine digs two rows of potatoes at one time and by elevating the potatoes, vines and some dirt over screens and aprons separates the potatoes from the vines and soil. The complete operation required some hand work on the part of six persons who were located at three stations on each side. The third or top position was called the "cage". The plaintiff was working in that position when injured. The injury occurred when the plaintiff's left hand was drawn into the machine while she was picking potatoes out of the dirt and off the vines during the last stage of the operation.

Within reach of the plaintiff's hands and about waist high was a chain which ran over two sprockets. This chain was kept tight by a small pulley. Kobler, who was driving the tractor, heard her scream and rushed to her assistance. He thus describes what followed:

"I released the clutch and I don't know how I jumped up to her as quick as I did, it just seemed like a miracle that I got there that fast.

"Q. When you got there what did you find? A. I found her hand had got pulled up on the outside chain up against the chain tightener and the outside chain on the sprocket was rubbing or had rubbed across her hand and it so happened that it was the sharp side of the chain and this leather tightener on the slack side of the chain was in the palm of her hand, which probably kept from breaking any bones in her hand, and her left hand was held by the shield so she couldn't get it out or go forward.

"Q. What did you do to get her loose? A. I just lifted the shield off and released the tension on the chain tightener so that her hand was free."

The plaintiff describes how her hand got caught in the machine as follows:

"I was in the cage of the machine the dust was terrific and the vines I thought particularly sticky and there were heavy lumps of dirt and in the course of the work I was doing at the time I did not notice this sprocket or whatever you call it, that my hand was possibly as close to that as it was, and while I was trying to save the potatoes that were buried under the dirt, I was reaching for vines and throwing them in front of me and saving potatoes at the same time, and during that time I must have grabbed a vine that was probably stuck in this tiny wheel that was going around and it took my hand faster than I realized and before I knew it my hand was in that machine and in that thing going around and at that time I began hollering but due to the noise they couldn't hear me and due to the dust we couldn't see each other and I still hollered and then I heard someone of the women yell to Mr. Kobler to stop the machine."

Excellent photographs of the portion of the machine where the accident occurred are in evidence. It is apparent that from where the plaintiff was standing in the cage the sprockets, chain and tightener were partially shielded. In order for her hand to have been caught between the chain and the tightener she either reached around or her hand was drawn around the edge of the shield. Her testimony constitutes the only evidence as to what occurred. There were no defects in the machine. It was in good working order.

The plaintiff testifies positively that she was neither warned nor instructed by the defendant or Kobler with respect to any dangers attending her work on the machine. The only caution she received was when one of her fellow workers said, "Watch your fingers."

The plaintiff was a senior in high school and above average intelligence. On graduation she was co-salutatorian of her class although she lost eight weeks' school attendance because of her injury. She lived in a small town and had never worked on any farm machinery prior to her employment on the potato picker.

■ In reviewing the sufficiency of the evidence upon an appeal from an order of the trial court denying a motion for judgment notwithstanding the verdict we view the evidence in the light most favorable to the verdict and conflicts of testimony must be resolved in favor of the verdict. Leonard v. North Dakota Co-op. Wool Marketing Ass'n, 72 N.D. 310, 6 N.W.2d 576; Kohler v. Stephens, 74 N.D. 655, 24 N.W.2d 64; Glaserud v. Hoff, 75 N.D. 311, 27 N.W.2d 305; Olson v. Kem Temple Ancient Arabic Order of Mystic Shrine, 78 N.D. 263, 49 N.W.2d 99; Knudsen v. Arendt, 79 N.D. 316, 56 N.W.2d 340; Stormon v. Weiss, N.D., 65 N.W.2d 475. We have observed this rule in stating the evidence.

Cases in this jurisdiction involving assumption of risk and contributory negligence of servants with respect to claimed liabilities for negligence on the part of their master are not numerous. We do find, however, statements of basic applicable law in a few cases. In Torgerson v. Minneapolis, St. Paul & Sault Ste. Marie Railway Company, 51 N.D. 745, 200 N.W. 1013, in the Syllabus by the Court we find the following:

"4. A servant must be held to assume ordinary risks which are obvious, and of which he is or must be held to be aware.

"5. Whether a danger is obvious, and whether there is any duty on the part of the master to warn, must be determined in the light of the capacity of the servant and the knowledge of or notice to the master of the servant's incapacity.

"6. When the servant is infirm and mentally deficient, it is for the jury to determine as to whether he has the ability and mental capacity to comprehend and appreciate any danger incident to that which he may be doing at the direction of the master.

"7. There is no assumption of risk by the servant, unless he understands and appreciates, or ought to understand and appreciate, such risk."

In Umsted v. Colgate Farmers' Elev. Co., 18 N.D. 309, 122 N.W. 390, 392, the court, in determining that a minor between nineteen and twenty years of age who was injured while in the defendant's employ was, under the facts in that case, entitled to have the questions of defendant's negligence and the plaintiff's contributory negligence and his assumption of risk submitted to the jury, said:

"The servant has a right to assume and to rely upon the assumption that the master has provided a reasonable safe place for him to work, unless such place is obviously and necessarily dangerous; but the master is not required to instruct or protect the servant against obvious, known, and necessary dangers, unless the servant, by reason of his youth, inexperience, and lack of intelligence, is unable to fully understand and comprehend the nature and extent of such dangers. It is the master's duty to protect, warn, and instruct young and inexperienced employees as to the dangers of the employment if the work is such that either experience or instruction is necessary to enable them to do it with safety."

In Hanel v. Obrigewitsch, 39 N.D. 540, 168 N.W. 45, 3 A.L.R. 1029, the court reversed a judgment in favor of a 39 year old plaintiff on the ground that the risk involved in that case was so patent and apparent that an employee of reasonable intelligence would be presumed to know and appreciate it. In the second paragraph of the Syllabus, the Court states this rule:

"An employee is presumed to see and understand all dangers that a prudent and intelligent person of the same age and experience and in the same capacity for estimating their significance would see and understand."

■ A master has the duty to warn and instruct immature and inexperienced servants of dangers incident to their work which are not obvious to them. Jenkins v. Jenkins, 220 Minn. 216, 19 N.W.2d 389; McLaughlin v. Black, 215 N.C. 85, 1 S.E. 2d 130; Thomas v. Mississippi Products Co., 208 Miss. 506, 44 So.2d 556; Bilodeau v. Gale Bros., Inc., 83 N.H. 196, 140 A. 172; Wilson v. White, Mo.App., 272 S.W.2d 1.

"But the master is not required to point out dangers which are known or must be obvious to and fully appreciated by the servant, after making due allowance for his youth. Generally, this question is for the jury." Shearman & Redfield on Negligence, Rev. Ed., Sec. 242, page 622.

The defendant contends that despite plaintiff's youth and inexperience with farm machinery, the dangers incident to her work on the potato picker were obvious to her and fully appreciated by her, that she therefore assumed the risk of her employment and that in conducting herself as she did at the time of the accident she was guilty of contributory negligence which bars her recovery as a matter of law. It is contended that the facts to support the defendant's position in this respect appear from circumstances and from the testimony of the plaintiff herself. The plaintiff began working on the machine on September 27th. She was injured on October 9th. During the intervening time she had rotated with the other employees at the various stations on the machine each day, and had therefore become familiar with its operation and with the duties of an employee at each station. Every half round, that is at each end of the field, the machine was stopped and any dirt and debris clogging it were removed. The plaintiff's testimony discloses she had been told that if anything got caught to wait until the machine got to the end of the field. She knew that it was dangerous to put her hand near the cogs and what would happen if she did put her hand in that area. She says that her hand was in that area not intentionally but as an accident and that at the time her hand was caught in the machinery she could not see the sprocket or wheel but knew they were there and that she would be injured if her hand went into the wheel or cogs. She insisted that

"one of these vines must have been caught in this wheel that went around and pulled my hand into it."

■ At this point in our consideration of the sufficiency of the evidence the question is whether after making due allowance for plaintiff's youth and inexperience the minds of reasonable men could differ as to whether or not the dangers attendant upon the performance of her duties were known to or were such that they must have been obvious to and fully appreciated by her. If such minds must agree that she had knowledge of the danger or that it was obvious to and must have been appreciated by her it was error to deny the motion for judgment notwithstanding the verdict. On the other hand, if the minds of reasonable men could differ with respect to these matters, they are determined by the verdict of the jury and it was proper for the trial court to deny the motion.

The defendant cites emphatically the case of Derringer v. Tatley, 34 N.D. 43, 157 N.W. 811, 813, L.R.A.1917F, 187. In that case the plaintiff, a fourteen year old bellboy in a hotel, who was not the elevator

operator, was injured when he extended his head within the surrounding cage of a passenger elevator through an opening in the door. The duties which he was performing did not require him to endanger himself and could have been performed without risk. He understood the obvious danger attending his act, but he "did not think." It was held that the plaintiff was guilty of contributory negligence and was not exonerated therefrom simply because he did not realize the risk that he assumed or did not think of what he was doing and observe the hazardous position in which he placed himself. That case is to be distinguished from the one at bar because the bellboy deliberately placed himself in an obviously hazardous position which was unnecessary for him to assume in the performance of his duties while the plaintiff in this case was in the position required by her duties and the jury could find that her hand was drawn into the moving machinery by a vine that she grasped in connection with the performance of her work.

We have found no authority more in point than the recent case of Cathey v. De Weese, Mo.1956, 289 S.W.2d 51, 55. The defendant employers were sued for damages for loss of a leg by the plaintiff while operating a hay baler. He was a farm hand 17 years, 5 months of age at the time of the accident. The trial court granted defendant's motion for judgment notwithstanding the verdict and the plaintiff appealed. The issues were negligence on the part of the employer and assumption of risk and contributory negligence on the part of the plaintiff. With respect to capacity the court had this to say:

"It is obvious from the record that Leon was a boy of average intelligence with such formal learning as a ninth grade education provides. But even a resourceful seventeen year old boy with a ninth grade education is not to be generally adjudged by the standards of care applicable to an adult, after a mere three weeks' use of complicated modern farm machinery. * * *

There is no specific evidence as to his 'capacity' with respect to this particular machine except as the fact may be inferred from his description of his success in its use and the fact, as his employer said, 'he seemed to understand, to catch on pretty quick how it worked.'"

Because of the similarity of the facts in that case to those in the case at bar we quote at length from that opinion.

"There was a printed warning sign near the top of the machine: 'Warning. Never step on the conveyor platform of the power take off without putting it out of gear.' Leon had seen the warning sign but 'it was faded out and dirty' and he had not read it, 'it wasn't too plain.' But, without having read the sign, Leon said that he knew it was dangerous to come in contact with the rollers. 'Q. Leon, you knew it was dangerous to be operating on this machine and trying to fix it as long as the rollers were turning? A. Yes, sir, in some respects but sometimes you couldn't find out all of what was wrong with it without them turning. Q. Sometimes you couldn't find out what was wrong with it without them turning? A. That's right. Q. That was the reason you were willing to assume whatever danger was involved to find out what was wrong? A. That's right, sir.' So Leon knew that there was danger in his mounting the machine with the power take-off in gear and attempting to disengage the tie arm with his foot or in attempting to unclog the machine but it does not follow from that knowledge alone that the trial court properly declared that he was guilty of contributory negligence or that he had assumed the risk and as a matter of law could not recover in this action. It is not enough that a boy may have been warned, or that the danger was visible, or that he had some knowledge of the hazard, the question is whether, by rea-

son of his youthfulness and inexperience, reasonable minds could differ as to his realization and appreciation of the danger. Smiley v. Jessup, supra [Mo.App., 282 S.W. 110] Benjamin v. C. Hager & Sons Hinge Mfg. Co., supra [Mo.App., 273 S.W. 754]; Ludwig v. H. D. Williams Cooperage Co., supra [156 Mo.App. 117, 136 S.W. 749]; Wilson v. White, supra [Mo. App., 272 S.W.2d 1]; Carter v. Baldwin, 107 Mo.App. 217, 81 S.W. 204. Leon's awareness of some danger is not conclusive evidence of contributory negligence, Rupp v. Chicago, B. & Q. R. Co., Mo.App., 234 S.W. 1050, 1054 and his testimony that he knew it was dangerous to come in contact with the rollers is not an admission that he *appreciated* the hazard. Benjamin v. C. Hager & Sons Hinge Mfg. Co., Mo. App., 273 S.W. loc. cit. 757; Carter v. Baldwin, supra. Not only must the minor employee have had knowledge of the danger, it is essential that he must have *appreciated* the hazard before it can confidently be said that there could be no reasonable difference of opinion as to the rashness and imprudence of his conduct. As the court said of the seventeen year old boy injured on a cotton spin-dryer in Evans v. General Explosives Co., 293 Mo. 364, 375–376, 239 S.W. 487, 491, 'although the danger in operating machinery may be visible, if by reason of the youth and inexperience of the operator he does not realize, or, in other words, is not aware of the danger to which he is exposed, it is the duty of the employer to warn him of his peril.' Or as it was stated in the leading case of Burger v. Missouri Pac. Ry. Co., 112 Mo. 238, 249–250, 20 S.W. 439, 441, 'In the conduct of a boy, we expect to find impulsiveness, indiscretion, and disregard of danger, and his capacity is measured accordingly. A boy may have all the knowledge of an adult respecting the dangers which will attend a particular act, but at the same time he may not

have the prudence, thoughtfulness, and discretion to avoid them which are possessed by the ordinarily prudent adult person.' In all the circumstances reasonable minds could well differ as to Leon's comprehension, realization, or appreciation of the hazards to which he was exposed and the adequacy of his employers' instructions and warning, and his contributory negligence and his employers' liability were not plainly determinable as a matter of law."

■ The awareness of some danger on the part of the plaintiff when considered in the light of her youth and inexperience together with the circumstances indicating that her hand was drawn rather than thrust between the chain and wheel does not warrant the court in determining as a matter of law that she was guilty of contributory negligence or assumed the risk of injury. As to these matters the minds of reasonable men might differ. The court properly denied the motion for judgment notwithstanding the verdict.

Neither counsel on this appeal nor have we in this opinion attempted to distinguish or separately discuss the doctrines of assumption of risk and the contributory negligence as applied to these facts. Such a discussion would be largely academic. For the benefit of those interested in comparing the two defenses we cite 35 Am.Jur., Master and Servant, Sec. 296; 56 C.J.S. Master and Servant § 357; 8 Thomp.Neg., Sec. 4611.

A number of specifications of error urge both misinstruction and noninstruction as grounds for a new trial. The defendant submitted no requested instructions. Written instructions were submitted to the jury but the court did not require counsel to designate parts of the instructions deemed objectionable as may be done under the provisions of Section 28-1413, NDRC 1943.

The court told the jury:

"There have been several legal terms brought into this case, such as negli-

gence, contributory negligence, due care, proximate cause, and so forth. It is therefore necessary, Gentlemen of the Jury, that these should be defined to you."

After defining proximate cause the court gave this instruction which is specified as error:

"So, if you find that the defendant was guilty of any act of negligence, as complained of in this action, and you further find that such negligence was the proximate cause of the injury and that the plaintiff was not contributorily negligent, then your verdict should be for the plaintiff. If you find that the plaintiff exercised ordinary care and was not guilty of contributory negligence, and that the defendant failed to disclose to the plaintiff any latent or other dangers incident to the operation of the machinery in question, then it would be up to you to say whether or not the defendant had been negligent in that respect."

The court gave no definition or explanation of contributory negligence. It is argued that this non-direction when coupled with the references that were made to contributory negligence left the jury uninstructed and uninformed with respect to a vital issue in the case and permitted the jury to guess or speculate as to the meaning and the application of the term contributory negligence.

■ It is the duty of a trial court to instruct the jury as to the law of the case pertaining to each essential issue. Putnam v. Prouty, 24 N.D. 517, 140 N.W. 93; Forzen v. Hurd, 20 N.D. 42, 126 N.W. 224. On the other hand it is the duty of counsel to submit to the court such requests for instructions as counsel may deem proper with respect to major issues or to call the court's attention to such issues with respect to which the court has failed to instruct. Where counsel's duty in this respect has not been performed non-direction unless it amounts to misdirection of the law concerning an issue before the court and jury is not reversible error. Huber v. Zeiszler, 37 N.D. 556, 164 N.W. 131.

We quote from Reineke v. Commonwealth Insurance Company, 52 N.D. 324, 202 N.W. 657, 661, omitting citations:

"It is settled by the overwhelming weight of judicial authority that it is the duty of counsel to aid the court in performing the function of charging the jury; that if the charges as given by the court do not cover every aspect of the case, or state the law upon every theory counsel has in mind, the omission must be brought to the attention of the trial court by an appropriate request for instructions; and that on appeal error cannot be predicatel of such omission in the absence of appropriate requests for instruction which have been improperly refused. * * * This rule has been applied in criminal cases * * *, and in civil cases in the federal courts * * *, unless such nondirection amounts to misdirection * * *."

See cases cited in Mousel v. Widicker, N.D., 69 N.W.2d 783.

■ The trial court both defined and explained negligence and assumption of risk as applied to the facts in this case but wholly omitted any definition or explanation of contributory negligence. It defined the term proximate cause as applied to negligence, but made no reference to proximate cause as applied to contributory negligence.

"Negligence of the plaintiff which contributes proximately to his injury will preclude recovery therefor. An instruction on contributory negligence to the effect that to preclude recovery on the part of the plaintiff his negligence must be *the* proximate cause of the accident is disapproved." Engen v. Skeels, 60 N.D. 652, 236 N.W. 240.

Before the jury was instructed counsel for the defendant stated:

"Defendant objects to the instruction to the jury upon contributory negligence, in that the only reference to contributory negligence is found on Page 7 and that the same is inadequate and does not adequately inform the jury of the definition or effect of contributory negligence, nor is such proper instruction found anywhere else in said Instructions to the Jury."

Thus the court was informed that the proposed instructions did not define contributory negligence or explain its effect with reference to the facts of the case.

In Bolen v. Dolph, 62 N.D. 700, 245 N.W. 259, 260, we ordered a new trial for a similar though less flagrant error than is disclosed by this record. In that case it is said:

"In its charge to the jury the court correctly defined 'contributory negligence' and the burden of proof in regard thereto. There was nothing, however, anywhere in the instructions, explaining to the jury what the effect of contributory negligence would be on the result of the trial. Nowhere are they told that if the negligence of both plaintiff and defendant contributed to the accident neither could recover and the action should be dismissed. * * * No requests were made to charge upon the effect of contributory negligence. Nondirection alone is not prejudicial error. Yet, when such nondirection is coupled with an instruction which, based on some of the facts in evidence to the exclusion of others, may mislead the jury as to the verdict it may return, then such charge as a whole

amounts to a misdirection. When, as in this case, both the pleadings and the evidence raise the issue of contributory negligence, the effect thereof should be explained to the jury and the jury permitted to bring in a verdict dismissing plaintiff's cause of action and also defendants' counterclaim."

Contributory negligence is an issue under the pleadings and evidence. The court told the jury that it was necessary to define contributory negligence but failed to define that term or explain its application to the facts of the case. The court used the term again in that part of the instructions above quoted in connection with proximate cause and the exercise of ordinary care by the plaintiff. The attorney for the defendant pointed out the court's omission before the instructions were given to the jury. Under all of these circumstances it is clear that the nondirection of which the appellant complains amounted to a misdirection and must therefore be deemed prejudicial. A new trial therefore must be granted.

The appellant specifies a number of other errors at law including a complete failure on the part of the trial court to give any instruction with reference to the nature of damages. Since a new trial must be granted in any event and the errors complained of are unlikely to be repeated upon a retrial of the case there is no necessity for their detailed discussion.

The order appealed from insofar as it denies to the defendant a judgment notwithstanding the verdict is affirmed. That part of the order which denies a new trial is reversed and a new trial is granted.

GRIMSON, C. J., and SATHRE, JOHNSON and BURKE, JJ., concur.